BWB:MTK

**15 MISC 2009**

**15 MISC 2009**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN THE MATTER OF AN APPLICATION OF    :
THE UNITED STATES OF AMERICA FOR AN   :    **TO BE FILED UNDER SEAL**
ORDER AUTHORIZING THE DISCLOSURE      :
OF LOCATION DATA RELATING TO A        :    AFFIDAVIT IN SUPPORT OF
SPECIFIED WIRELESS TELEPHONE          :    WARRANT APPLICATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

        I, Gino X. Izzo, being first duly sworn, hereby depose and state as follows:

        1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the prospective location of (929) 247-7890 (the "SUBJECT TELEPHONE"), which is being used by the TARGET SUBJECT of an investigation, whose identity has yet to be discovered, and whose wireless telephone service provider is T-Mobile USA, Inc. ("Service Provider"). The SUBJECT TELEPHONE is described herein and in Attachment A, and the prospective location information to be seized is described herein and in Attachment B.

        2.     I have been a Task Force Officer with the Drug Enforcement Administration (the "Investigating Agency") since July 2009.  I have been assigned to investigate violations of criminal law relating to narcotics trafficking.  These investigations are conducted both in an undercover and overt capacity.  I have participated in investigations involving search warrants and arrest warrants.  As a result of my training and experience, I

am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other Task Force Officers, agents and witnesses. Because the purpose of this affidavit is limited to demonstrating probable cause for the requested warrant, it does not set forth all of my knowledge about this matter. In addition, when I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

4.      For the reasons set forth below, I respectfully submit that probable cause exists to believe that the requested information will lead to evidence of the crime(s) of distribution and possession with the intent to distribute controlled substances in violation of Title 21, United States Code, Section 841 and conspiracy to do the same in violation of Title 21, United States Code Section 846 (the "Subject Offenses"), as well as the identification and location(s) of the TARGET SUBJECT who is engaged in the Subject Offenses.

## FACTS ESTABLISHING PROBABLE CAUSE

5.      I have been involved in an investigation regarding the distribution of Oxycodone tablets in the metropolitan New York and New Jersey areas.

6.      In connection with that investigation, since on or about June 1, 2015, Task Force Officers have spoken with an individual who is a confidential source ("CS-1") for law enforcement. CS-1 has worked with the Investigating Agency since approximately January 2015 and provided reliable information in the past seven months.

2

7.      CS-1 knows a target of the investigation, MICHAEL GIBBARD, to be a narcotics dealer.  On or about June 8, 2015, CS-1 informed Task Force Officers that he/she had recently spoken with individuals known to GIBBARD at a gym in Queens, New York. During their conversation, the individuals known to GIBBARD informed CS-1 that the he was in possession of approximately 6,000 pills of Oxycodone.

8.      On or about June 11, 2015, CS-1 positively identified GIBBARD in a photo array.

9.      On or about June 29, 2015, CS-1 spoke with GIBBARD at the aforementioned gym in Queens, New York.  GIBBARD asked CS-1 if he/she had any interest in purchasing Oxycodone pills.  CS-1 stated that he/she was interested in purchasing the pills.  GIBBARD informed CS-1 that he would provide CS-1 with a sample the next time they encountered each other at the gym.

10.     GIBBARD informed CS-1 that he purchases the pills in large quantities from the TARGET SUBJECT.  GIBBARD also informed CS-1 that he could have more pills "pressed" once his supply was exhausted.  GIBBARD informed CS-1 that he resupplies his stock of pills with the TARGET SUBJECT biweekly.

11.     On or about July 6, 2015, CS-1 informed Task Force Officers that he/she had met GIBBARD at the gym earlier in the day.  At that time, GIBBARD provided CS-1 with a sample of two pills.  Task Force Officers arranged to meet CS-1 to collect the samples.

12.     The pills collected from CS-1 contained the marking "A/215" pressed on one side.  Task Force Officers immediately sent the sample pills to the Northeast Regional Laboratory ("NERL") for chemical testing.

13.     On July 9, 2015, NERL verbally informed Task Force Officers that the sample pills were not Oxycodone but rather Acetyl Fentanyl.

14.     On July 13, 2015 Task Force Officers received the official NERL report confirming that the pills contained Acetyl Fentanyl.  According to NERL, Acetyl Fentanyl is a Schedule I narcotic.  It is an extremely powerful opioid used in medical treatment.  Acetyl Fentanyl is approximately 30 to 50 times more potent than heroin.

15.     On or about July 23, 2015, members of the DEA Tactical Diversion Squad conducted surveillance of a meeting between CS-1 and GIBBARD at the Club Fitness Gym ("Gym") located in Astoria, New York.  Prior to the meeting, Task Force Officers equipped CS-1 with an audio/video recording device.  The meeting had been arranged by CS-1 to discuss the potential sale of additional pills to CS-1.  At the meeting, GIBBARD agreed to sell 1,000 pills to CS-1 at a date to be determined.

16.     On or about August 12, 2015 and upon the direction of Task Force Officers, CS-1 conducted a control buy of 500 pills from GIBBARD through an intermediary known to both CS-1 and GIBBARD.  GIBBARD had previously informed CS-1 that the pills would be provided on consignment.  CS-1 would provide the GIBBARD with $3,500.00 at a date to be determined.

4

17.     At the same meeting, GIBBARD also informed CS-1 that he recently had in his possession as many as 9,000 pills of 30mg Oxycodone.  GIBBARD informed CS-1 that 2,000 pills were to be sold that same night to another buyer.

18.     On or about August 19, 2015, CS-1 met GIBBARD and provided him with $3500.00.

19.     On or about September 21, 2015, Task Force Officers approached the intermediary known to both GIBBARD and CS-1 who participated in the August 12, 2015 controlled buy.  He/She agreed to cooperate with Task Force Officers and was subsequently signed up by the DEA as a confidential source (hereinafter "CS-2").

20.     CS-2 has made consensually monitored phone calls with GIBBARD and has provided Task Force Officers with text messages received from GIBBARD.

21.     For example, on or about September 28, 2015, CS-2 made a consensually monitored telephone call to GIBBARD:

CS-2:       So, yo, what's going on everyone's waiting for you?

GIBBARD:   What happened?

CS-2:       I said, were, I'm waiting for you what's the story?

GIBBARD:   I saw my friend, when was it?  Saturday

CS-2:       yeah

GIBBARD:   He's like, so, he like, still works that kid, he's got a real job, he makes fucking $5,000 dollars a week, He makes $5,000 dollars a week, legitimately.  He U/I; you know what I'm saying, he's an electrician, local 3, you know I'm saying?

CS-2:       oh ok

5

GIBBARD:   So, it's like, It's like that, but it's like when its time its time, so you know what I'm saying, he can only do it at certain times.

CS-2:   oh, alright

CS-2:   What I'm saying is if it's an issue for him to get it going that many, like, I can break it up, you know what I'm saying? It doesn't have to be in one shot, I would like it to be so I can get it over with, you know what I mean?

GIBBARD:   I got you, I'm backed, I'm backed up, for,  I'm backed up at least, how about this..I'm backed up three blocks.

CS-2:   Wow

GIBBARD:   okay

CS-2:   god, god bless you.

GIBBARD:   no joke  I'm backed up three; I'm backed up three blocks.

GIBBARD:   god bless you

GIBBARD:   seriously

CS-2:   that's crazy, unbelievable.  I didn't think that thing was going to go.

GIBBARD:   no, I'm backed up that much.  Three blocks.

CS-2:   alright, well as soon as ugh, you know, the traffic opens up, you know, just, I'll come right to you, just call me whenever.  Even if, like I said, even if it's not that, you know,  cause I know when you spoke to you know who, he wanted to,  you know, tell you, you know, it is what it is, you know?

GIBBARD:   yup

CS-2:   so even if its half, or a quarter, or whatever, I'll just, just let me know. I'll come right over.

GIBBARD:   you got it

CS-2:        alright brother be good, I'll talk to you soon

GIBBARD:   alright, bye

      22.    CS-2 informed Task Force Officers that he/she understood GIBBARD's reference to his "friend" to be the TARGET SUBJECT, i.e. the individual who manufactures the Acetyl Fentanyl pills that GIBBARD distributes. CS-2 also understood GIBBARD's statement that he was "backed up three blocks" to mean that GIBBARD owed pills to three other individuals before he could supply CS-2.

      23.    CS-1 previously informed Task Force Officers that GIBBARD seeks a resupply of pills from the TARGET SUBJECT approximately biweekly.

      24.    On or about October 15, 2015, GIBBARD informed CS-2 that pills had become available for CS-1 to purchase. As with the first controlled buy, GIBBARD would only conduct the transaction using CS-2 as an intermediary.

      25.    That same day, at the direction of Task Force Officers, CS-2 arrived at GIBBARD's residence and was provided with 2,200 pills. CS-2 stated that he/she was interested in purchasing 5,000 pills, to which GIBBARD replied, in sum and substance, that he would look into the availability of additional pills. CS-2 informed GIBBARD that he/she would return shortly with CS-1's purchase money. Task Force Officers supplied CS-2 with $13,500.00 which he/she delivered to GIBBARD later that evening.

      26.    On or about October 16, 2015, at the direction of Task Force Officers, CS-2 called GIBBARD and inquired about the availability of additional pills. GIBBARD

7

stated, in sum and substance, that he would immediately call the TARGET SUBJECT to discuss a resupply of pills.

27.     A review of the court-authorized pen register on GIBBARD's cellular telephone revealed that shortly after speaking with CS-2, GIBBARD dialed a telephone number which appeared frequently in the pen register. Task Force Officers believed this telephone number was associated with the TARGET SUBJECT.

28.     On October 19, 2015, the Honorable Robert M. Levy, U.S.M.J., authorized a prospective cell site warrant on the telephone number described in paragraph 27. Information provided by the service provider revealed that the telephone number was being utilized by an individual in California.

29.     On October 20, 2015, GIBBARD called CS-2 and informed him/her that he could provide CS-2 with approximately 2,000 more pills for purchase.  That same day, at the direction of Task Force Officers, CS-2 agreed to the purchase.

30.     Prior to arriving at GIBBARD's residence, Task Force Officers equipped CS-2 with an audio/video recording device.  At the meeting, GIBBARD provided CS-2 with 1,978 pills in exchange for $13,660.00 of funds supplied to CS-2 by the DEA.

31.     CS-2 informed Task Force Officers that during the approximately 25 minute meeting, CS-2 asked GIBBARD to confirm the exact quantity of pills that he/she was receiving.  CS-2 informed Task Force Officers that GIBBARD sent a text message to the TARGET SUBJECT with this inquiry.  A short time later, GIBBARD received a telephone call from the TARGET SUBJECT who stated, in sum and substance, that the bag contained

8

2,150 pills.  CS-2 informed Task Force Officers that these statements were audible to him/her.  A review of CS-2's audio/video recording device confirms this account.

32.  A review of GIBBARD's cellular telephone toll records during the time interval of the meeting revealed that GIBBARD received a call from the SUBJECT TELEPHONE.  A further review of GIBBARD's toll records revealed that GIBBARD has communicated with the TARGET SUBJECT on the SUBJECT TELEPHONE approximately 105 times since October 11, 2015.

33.  In my training and experience, I have learned that the Service Provider is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call

9

made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

31.     Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the SUBJECT TELEPHONE, including by initiating a signal to determine the location of the SUBJECT TELEPHONE Service Provider's network or with such other reference points as may be reasonably available.

32.     Based on my training and experience, I know that the Service Provider can collect cell-site data about the SUBJECT TELEPHONE.

### Authorization Request

33.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user(s) of the SUBJECT TELEPHONE would seriously jeopardize the ongoing investigation, as such disclosure would permit the TARGET SUBJECT to flee from and evade prosecution.  Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic

communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

35.     I further request that the Court direct the Service Provider to disclose to the government any information described in Attachment B that is within the Service Provider's possession, custody, or control. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, by, inter alia, initiating a signal to determine the locations of the SUBJECT TELEPHONE on the Service Provider's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

36.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONE outside of daytime hours.

37.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation. Disclosure of this application and these orders would seriously jeopardize the ongoing investigation, as such a

11

disclosure would give the TARGET SUBJECT an opportunity to continue to flee from or evade prosecution.

38.      IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. § 2705(b) and for the reasons stated above, the Court issue an Order commanding the Service Provider not to notify any person (including the subscriber or customer of the account listed in the attached warrant) of the existence of the attached warrant until further order of the Court.

Dated:      Brooklyn, New York
            October 22, 2015

Gino X. Izzo
Task Force Officer
Drug Enforcement Administration

Sworn to before me the 22nd day of October, 2015

S/ Ramon E. Reyes Jr.
THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

### Property To Be Searched

1.      The cellular telephone assigned call number (929) 247-7890 (the "SUBJECT TELEPHONE"), whose wireless service provider is T-Mobile USA, Inc., a company headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.      Information about the location of the SUBJECT TELEPHONE that is within the possession, custody, or control of T-Mobile USA, Inc., including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the SUBJECT TELEPHONE described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the SUBJECT TELEPHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the SUBJECT TELEPHONE on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE APPLICATION OF THE UNITED   :
STATES OF AMERICA FOR AN ORDER :
PURSUANT TO 18 U.S.C. § 2705(b)       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO BE FILED UNDER SEAL

ORDER 15 MISC 2009

     Application having been made for a search warrant under Federal Rule of

Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of

the cellular telephone assigned call number (929) 247-7890, used by a target subject of an

investigation (the "SUBJECT TELEPHONE"), whose wireless telephone service provider is

T-Mobile USA, Inc. (the "Service Provider"), as further described in Attachment B to the

search warrant (the "Requested Information");

     The Court finds that there is reasonable cause to believe that providing

immediate notification of the execution of the warrant may seriously jeopardize an ongoing

investigation, including by giving the target an opportunity to flee or continue flight from

prosecution. See 18 U.S.C. §§ 2705(b)(2), 2705(b)(3) and 2705(b)(5). Furthermore, the

execution of this warrant will not result in the seizure of any tangible property or any wire or

electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the warrant

authorizes the seizure of any stored wire or electronic information, that seizure is expressly

authorized by 18 U.S.C. § 2703(c)(1)(A).

     IT IS HEREBY ORDERED pursuant to Federal Rule of Criminal Procedure

41 and 18 U.S.C. § 2703(c)(1)(A) that law enforcement officers, beginning at any time

within ten days of the date of this Order and for a period not to exceed 30 days, may obtain

the Requested Information concerning the SUBJECT TELEPHONE, with said authority to

extend to any time of the day or night as required, including when the SUBJECT

TELEPHONE leaves the Eastern District of New York; all of said authority being expressly

limited to ascertaining the physical location of the SUBJECT TELEPHONE and expressly

excluding the contents of any communications conducted by the user(s) of the SUBJECT

TELEPHONE.

It is further ORDERED that the Service Provider assist law enforcement by

providing all information, facilities and technical assistance needed to ascertain the

Requested Information, including by initiating a signal to determine the location of the

SUBJECT TELEPHONE on the service provider's network or with such other reference

points as may be reasonably available and at such intervals and times as directed by the law

enforcement agent serving the proposed order, and furnish the technical assistance necessary

to accomplish the acquisition unobtrusively and with a minimum of interference with such

services as the service provider accords the user(s) of the SUBJECT TELEPHONE.

It is further ORDERED that the United States Attorney's Office compensate

the service provider for reasonable expenses incurred in complying with any such request.

It is further ORDERED that the Court's Order and the accompanying

Affidavit submitted in support thereof be sealed until further Order of the Court, except that

copies of the Court's Order in full or redacted form may be maintained by the United States

Attorney's Office, and may be served on law enforcement officers, and other government

and contract personnel acting under the supervision of such law enforcement officers, and the

service provider as necessary to effectuate the Court's Order.

It is further ORDERED that this warrant be returned to the issuing judicial officer within 14 days after the termination of the monitoring period authorized by the warrant.

It is further ORDERED that, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extension thereof.

It is further ORDERED under 18 U.S.C. § 2705(b) that the Service Provider shall not disclose the existence of the attached warrant, or this Order of the Court, to the listed subscriber or to any other person, unless and until otherwise authorized to do so by the Court, except that Service Provider may disclose the attached warrant to an attorney for the Service Provider for the purpose of receiving legal advice.

It is further ORDERED that this Order apply to any changed mobile telephone number subsequently assigned to the SUBJECT TELEPHONE within the period of this Order.

It is further ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

Dated:      Brooklyn, New York
            October 22, 2015

                                        S/ Ramon E. Reyes Jr.
                                        _____
                                        THE HONORABLE RAMON E. REYES, JR.
                                        UNITED STATES MAGISTRATE JUDGE
                                        EASTERN DISTRICT OF NEW YORK

18